**JOSEF SADAT (282485)**
**9595 WILSHIRE BLVD., SUITE 900**
**BEVERLY HILLS, CA 90210**
**OFFICE: (310) 300-8435**
**CELL: (310) 709-6291**
**FAX: (310) 300-8401**
**josadatcriminaldefense@gmail.com**
**Attorney for Defendant,**
**RICHARD O'CONNOR**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 8:23-CR-00027-DOC |
| Plaintiff, | DEFENDANT'S SUPPLEMENTAL BRIEF ON SENTENCING; EXHIBIT |
| vs. | DATE: FEBRUARY 5, 2024 |
| RICHARD O'CONNOR, | TIME: 2:00PM |
| | COURTROOM: 10A |
| Defendant. | |

**TO THE HONORABLE DAVID O. CARTER, UNITED STATES DISTRICT JUDGE AND TO ASSISTANT UNITED STATES ATTORNEY MELISSA RABBANI:**

Defendant, Richard O'Connor, through his counsel of record, Josef Sadat, Esq., hereby submits his Supplemental Brief on Sentencing. This submission will be based on the enclosed memorandum of points and authorities and exhibit, the files and records in this case, together with whatever additional oral, written and/or documentary evidence and/or argument as may be presented at the Sentencing Hearing.

-1-

United States of America v. Richard O'Connor
Defendant's Supplemental Brief on Sentencing
CASE NO.: 8:23-CR-00027-DOC

Dated: January 13, 2024                                        Respectfully submitted,

                                            By:     /s/ Josef Sadat
                                                    JOSEF SADAT
                                                    Attorney for Defendant,
                                                    Richard O'Connor

United States of America v. Richard O'Connor
Defendant's Supplemental Brief on Sentencing
CASE NO.: 8:23-CR-00027-DOC

## **_MEMORANDUM OF POINTS AND AUTHORITIES_**

### I.
### INTRODUCTION

Mr. O'Connor pled guilty on May 15, 2023 to a single-count Information, charging him with Possession of Child Pornography in violation of Title 18 U.S.C. §§ 2252A(a)(5)(B)(b)(2). The exact language of the Information only listed three specific videos that the Defendant correspondingly admitted to knowingly possessing. In the Plea Agreement (PA) that was accepted by the Court on May 15, 2023, it stated in the factual basis that "A forensic review of defendant's iCloud account identified at least 81 videos and 158 images of child pornography" (PA, Pg. 12). However, Defendant never specifically acknowledged in the factual basis of the plea agreement or otherwise that he knowingly possessed *all* of these 151 images and/or 81 videos on his iCloud account. On November 13, 2023, A Presentence Report (PSR) was filed by United States Probation Officer Leslie De La Torre. Contrary to the precise wording of Mr. O'Connor's single-count Information as well as the details/terms of his Plea Agreement, the USPO claimed "Mr. O'Connor was found to possess 429 images and 126 videos of child pornography on his Apple iCloud account" (PSR¶ 35).

Sentencing on this case was scheduled for December 18, 2023 at 7:30 AM. On this day, after briefly hearing from the defense about the unique "iCloud-App" circumstances surrounding the case, the Court started to raise questions/concerns about the applicability of a 5-level increase for the offense involving 600 or more images (pursuant to §2G2.2(b)(7)(D)). Upon inquiring from both the Government and USPO as to whether the specific technological circumstances surrounding the offense were as novel to them as they were the Court, the Court instructed both the Defense and Prosecution to provide a supplemental brief solely on this sentencing issue. Defense thereby restricts its discussion below to only the applicability of §2G2.2(b)(7)(D), while reserving arguments on both other Specific Offense Characteristics as well as applicable downward departures and/or 18 U.S.C. Sec. 3553 variances at the Sentencing Hearing.

–3–

United States of America v. Richard O'Connor
Defendant's Supplemental Brief on Sentencing
CASE NO.: 8:23-CR-00027-DOC

## II.

## MR. O'CONNOR ACCESSED CHILD PORNOGRAPHY THROUGH AN APPLE iPHONE APP CALLED VIBER; IMAGES AND/OR VIDEOS THAT THE DEFENDANT BOTH VIEWED AND DID NOT VIEW ON THE APP WERE AUTOMATICALLY BACKED UP TO HIS APPLE iCLOUD ACCOUNT.

When law enforcement raided Mr. O'Connor's house on September 7, 2022, they found no evidence of any wrongdoing. However, Mr. O'Connor nonetheless voluntarily told them that he had knowingly accessed child pornography on his phone via an App he downloaded from the iPhone App Store called "Viber"— but had since deleted from his iPhone following a crisis of conscience. The App is free to download and currently has approximately 200 million active users. It is a social networking/ messenger service similar in nature to WhatsApp, Twitter, Facebook, Instagram and/or TikTok.

Inside the App, grotesque and/or morally questionable content is routinely shared/posted by its millions of users spread across the globe. These can range from horrifying scenes of violence such as beheadings and torture to sadistic sexual conduct involving animals and robots. While such scenes are disturbing for many users, they do not appear to be prohibited by the App, let alone illegal to view/download within various chat-groups inside the App. However, inside these same countless chat-groups where morally dubious but not necessarily illegal images/video are posted, are users who decide to post, comment on, and/or exchange material that is undoubtedly illegal—i.e. child pornography. Because of the high quantity of users and chat-groups, being exposed to child pornography while flippantly joining various chat-groups is *at least initially* not necessarily an intended consequence.

And it was within this very context that Mr. O'Connor began joining a large mix of different chat-groups with often hundreds if not thousands of users in each respective chat group. Significantly,

– 4 –

United States of America v. Richard O'Connor
Defendant's Supplemental Brief on Sentencing
CASE NO.: 8:23-CR-00027-DOC

within the numerous chat groups that Mr. O'Connor had joined, the overwhelming majority did not spread child pornography. Rather, only three of the groups he entered (which had hundreds of participants/users) actually posted child pornography. And within these three chat groups, most of the posted videos/images actually involved non-CP related material, albeit still often pornographic and/or violent/grotesque. In none of these chat groups did Mr. O'Connor ever actually post an image or video, encourage or comment on any image or video, and/or participate in any form of communication with any of the hundreds of active users within the three targeted chat-groups. However, as outlined in the attached *Technical Summary Report* from Cellular Expert Thomas Blackburn, since the App had an automatic default for backing up chat group messaging within the App, combined with an an iCloud backup setting default for Mr. O'Connor's iPhone, the tsunami of videos/images that were posted by hundreds of other users were all subsequently uploaded to Mr. O'Connor's iCloud account. Significantly, while this would include images/videos that he specifically and knowingly clicked on and/or downloaded/possessed, it would also include images/videos that he would have not clicked on, downloaded/possessed, and/or even viewed!

### III.

**FOR PURPOSES OF SENTENCING, DEFENDANT DID NOT KNOWINGLY POSSESS ALL OF THE CHILD PORNOGRAPHY IMAGES AND VIDEOS IN HIS iCLOUD ACCOUNT, THE OVERWHELMING MAJORITY OF WHICH WERE AUTOMATICALLY DOWNLOADED WHEN HE ENTERED CERTAIN CHATGROUPS.**

As of the date of this Supplemental Brief on Sentencing, the defense is not aware of a single published case specifically addressing the "iCloud-App" issue within the context of §2G2.2(b)(7)(D). While the Court's ruling here may serve as a legal landmark on the edge of a new frontier, the land is not completely barren on this issue, as a logical parallel can be drawn from previous 9th Circuit case law addressing §2G2.2(b)(7)(D) within the context of "cache files." In fact, perhaps the closest case on point discussing this parallel is *United States v. Kuchinski*, 469 F.3d 853 (9th Cir. 2006).

–5–

United States of America v. Richard O'Connor
Defendant's Supplemental Brief on Sentencing
CASE NO.: 8:23-CR-00027-DOC

In *Kuchinski*, the Defendant properly conceded that he did knowingly receive and possess the 110 images that he clicked/downloaded and that were later recovered in his computer's downloaded files as well as his recycle bin for deleted files. However, Mr. Kuchinski was also charged with an additional 13,904 to 17,984 images, which appeared in his computer's "cache files" (i.e. Active and Deleted Temporary Internet Files). *Id.* at 862. The Defendant objected to possessing these additional images since he indicated he never actually specifically clicked on/downloaded them and likely did not even view many of them. The Court of Appeals ended up agreeing with him, concluding in the process that do otherwise would "turn abysmal ignorance into knowledge and a less than valetudinarian grasp into dominion and control" *Id*. at 863.

This conclusion by the 9th Circuit was the logical one given how cache files work. Specifically, when a person accesses a web page, his or her web browser will automatically download that page onto his Active Temporary Internet Files and when the Active Temporary Internet Files get too full, they spill excess saved information onto the Deleted Temporary Internet Files. *Id*. Given that this process is largely without any action and/or knowledge of the computer user, only a very sophisticated computer user might know this and/or might be able to even access these cache files. *Id*. However, most sophisticated and virtually all unsophisticated users don't even know they are on their computer. *Id*.

As noted in the attached report from Mr. Blackburn, the same can be said of iCloud backups as it pertains to the subtle secondary backup of "Apps" and what essentially amounts to a *nescience backup within a backup*. Most users of an iPhone, sophisticated or not, know that the iCloud backups photos and videos that are stored in the iconic oval rainbow flower symbol. Therefore, when clicking on and downloading any image or video—whether it be from an iPhone browser or App— it is the logical assumption of even the most rudimentary iPhone users that these downloaded images or videos can later be uploaded to the iCloud from the photos/videos section of the iPhone. These type of images or videos, which were specifically clicked on/downloaded, like those found in both Kuchinski's downloaded and deleted files, are fair game to be counted against a defendant like Mr. O'Connor. However, what is not fair is to pile on all of the images and videos that were automatically downloaded

–6–

United States of America v. Richard O'Connor
Defendant's Supplemental Brief on Sentencing
CASE NO.: 8:23-CR-00027-DOC

to Mr. O'Connor's iCloud during an automated iPhone backup (supplemented by a separate but simultaneous secondary automated backup within the Viber App settings of all chat group history) simply from visiting the various Viber App Group Chats. This is especially true since any given Group Chat within the Viber App can be very long (especially with hundreds of participants) and therefore "the user may be signed on to the Group Chat and may not even be aware of all of the chat text messages, photos, images and videos that get posted in the chat if the user is *not monitoring the chat continuously*." (Cellular Expert Report, Pg. 13).

## IV.
## CONCLUSION

The initial Plea Agreement that was sent by the Government to the Defense for purposes of a pre-indictment resolution included terms that were not consistent with the spirit of the specific nature and circumstances of the offense. Only after the Prosecution agreed to specific revisions did Mr. O'Connor sign the Plea Agreement. Counsel respectfully asks that the Government and USPO honor the specific terms of the Plea Agreement that was accepted by the Court. Given that Mr. O'Connor did not admit knowingly downloading from the App and possessing any videos beyond the three subject videos listed in both the Information and Plea Agreement, and given the impracticability of him being able to continuously monitor each of the respected chat groups, both the legal and just calculation is an additional 3-level increase (instead of 5) for the offense involving *at least* 150 images but fewer than 300 (Application Note 6(B)(ii) instructs that each video is equivalent to 75 images, whereby the three video files listed in the Information convert to (75 x 3) a total of 225 images). All parties should be in agreement that it is not appropriate to use images and/or videos that Mr. Connor never downloaded and/or even viewed against him. In fact, as the existing case law highlights, to do so would once again *turn abysmal ignorance into knowledge and a less than valetudinarian grasp into dominion and control.*

–7–

United States of America v. Richard O'Connor
Defendant's Supplemental Brief on Sentencing
CASE NO.: 8:23-CR-00027-DOC

Dated: January 13, 2024                                    Respectfully submitted,

                                        By:   /s/ Josef Sadat
                                                JOSEF SADAT
                                                Attorney for Defendant,
                                                Richard O'Connor

United States of America v. Richard O'Connor
Defendant's Supplemental Brief on Sentencing
CASE NO.: 8:23-CR-00027-DOC