UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION - SANTA ANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. SACR 23-00027-DOC-1 |
| | ) | |
| Plaintiff, | ) | Santa Ana, California |
| | ) | Monday, December 18, 2023 |
| v. | ) | 7:46 A.M. to 7:58 A.M. |
| | ) | |
| RICHARD O'CONNOR, | ) | |
| | ) | |
| Defendant. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Appearances:                See Page 2

Deputy Clerk:               Karlen Dubon

Court Reporter:             Recorded; CourtSmart

Transcription Service:      JAMS Certified Transcription
                            16000 Ventura Boulevard #1010
                            Encino, California  91436
                            (661) 609-4528

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

APPEARANCES:


For the Plaintiff:          Office of the U.S. Attorney
                            Santa Ana Division
                            By:  MELISSA S. RABBANI
                            411 West Fourth Street, Suite 8000
                            Santa, Ana, California  92701
                            (714) 338-3500
                            melissa.rabbani@usdoj.gov


For the Defendant:          Law Office of Josef Sadat
                            By:  JOSEF SADAT
                            9465 Wilshire Boulevard, Suite 300
                            Beverly Hills, California  90210
                            (310) 300-8435
                            josadatcriminaldefense@gmail.com


Also Present:               LESLIE DE LA TORRE
                            United States Probation and Pretrial
                            Services

SANTA ANA, CALIFORNIA, MONDAY, DECEMBER 18, 2023, 7:46 A.M.

THE COURT:  And the case -- this is case No. 23-00027, and if you'd make your appearances, please.

MELISSA S. RABBANI:  Good morning, Your Honor. Melissa Rabbani for the Government --

THE COURT:  Thank you.

MS. RABBANI:  -- and with me at counsel table is U.S. Probation and Pretrial Services Officer Leslie De La Torre.

THE COURT:  All right.  Thank you very much.

Counsel?

JOSEF SADAT:  Joe Sadat for Mr. O'Connor, who is present out of custody, Your Honor.

THE COURT:  All right.  Please.  Thank you very much.  Gentlemen, if you'd both have a seat.

And, Counsel, do you know of any reason or legal cause why the Court should not proceed to sentence today?

MR. SADAT:  No, Your Honor.

THE COURT:  Did you receive a copy of the Presentence Report 35 days prior to today's date?

MR. SADAT:  Yes.

THE COURT:  And most importantly, have you had time to thoroughly and thoughtfully discuss that report with your client?

MR. SADAT:  Yes, sir.

THE COURT:  Mr. O'Connor, have you had an opportunity to thoroughly and thoughtfully discuss this Presentence Report with your counsel?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, are you family and friends out there?  Let me just say to each of you that nobody comes -- counsel, sit down, please.  Thank you.

Nobody comes to court on a good day.  Okay?  These are -- this is not a good day.  And my heart goes out to you because you truly love this young man.  I don't know what I'm going to do yet, frankly.  I'm going to listen to both sides. But I can't tell you how many times I sentence people and there's nobody that cares in the audience.  So he's very fortunate to have all of you here, and you're going to be treated with great dignity and respect.

And, Counsel, I would like to hear your arguments at this time.  And you can use the lectern, please.

MR. SADAT:  So, Your Honor, I'd like to respond to the Government's position papers and the revisions from Probation.  Before I do, as you mentioned earlier, there are people in the courtroom; so I want to briefly acknowledge who they are.  There is Scott Larson (phonetic) --

THE COURT:  Uh-huh.

MR. SADAT:  -- who is --

THE COURT:  Where's that gentleman located?

Thank you, sir.

MR. SADAT:  He's an assistant principal and athletic director.

THE COURT:  I read your input, sir.  Thank you.

MR. SADAT:  We also have Ann Schrader (phonetic).

THE COURT:  I read all of yours.  Yeah.  It's nice meeting you.  It's a pleasure.

MR. SADAT:  Retired principal.

Barbara Bucket (phonetic).

THE COURT:  Pleasure.

MR. SADAT:  And Sherry (phonetic) Jones.

THE COURT:  Thank you.

MR. SADAT:  They're both retired teachers, colleagues of Mr. O'Connor.

THE COURT:  Right.

MR. SADAT:  We have Andre here.

THE COURT:  Thank you.

MR. SADAT:  He's a former student.  Now, he's one of the individuals that has not provided a letter yet to the Court, and arguably, what he has to say could be the most important thing you hear today.

Kim Westerman (phonetic).

THE COURT:  Thank you.

MR. SADAT:  She's a lifelong friend of Mr. O'Connor.

Chris Fuller.  He's a parent of a former wrestling student of Mr. O'Connor.

THE COURT:  Right.

MR. SADAT:  And then we have Dana Votanyo (phonetic), who's his cousin.

THE COURT:  Thank you.

MR. SADAT:  And then Rozy (phonetic), who's his wife --

THE COURT:  Thank you.

MR. SADAT:  -- and mother of his three children.

Your Honor, the first point I wanted to address was going to be the vulnerable-victim issue in terms of the plus-two adjustment.  The Government believes that it's not appropriate in this case.  The defense also believes that that plus-two is not appropriate in this case.

THE COURT:  Right.

MR. SADAT:  It could be a moot point.  I don't need to get into the weeds of it.  I was going to ask at this point: Has the Court made a decision on whether that is appropriate or not?

THE COURT:  Counsel, thank you for the questions.  Continue on now.

MR. SADAT:  Okay.

THE COURT:  Okay.  I don't answer questions of counsel.  Okay?  Thank you very much.

MR. SADAT:  Fair enough.  Then I'll discuss it, then --

THE COURT:  All right.  Thank you.

MR. SADAT:  -- out of extra due caution.

THE COURT:  Thank you.

MR. SADAT:  So the biggest issue with the vulnerable-victim adjustment that Probation has asked for is it completely ignores Application Note 2.

THE COURT:  Well, just a moment.

Counsel, are you both stipulating that this is not a vulnerable victim?

MS. RABBANI:  The Government does so stipulate.

THE COURT:  All right.  Thank you.

Continue on, then, Counsel.  It's moot.

MR. SADAT:  It stipulates a move on from --

THE COURT:  Yes.

MR. SADAT:  -- the vulnerable victim?

THE COURT:  Yes.

MR. SADAT:  Okay.

The second point, Your Honor, is the plus-five that's been alleged for the quantity of images and videos. Now, there's a discrepancy in terms of --

THE COURT:  Well, it's this double counting that you've alluded to concerning it going up in the cloud; correct?

MR. SADAT:  No, sir.  This was the extra counting -- the vulnerable-victim issue was the triple counting, as opposed to double counting, but we've gone away from that.

THE COURT:  No.  Let me say it again.  This involves the cloud; is that correct?

MR. SADAT:  iCloud account.  Yes.

THE COURT:  Okay.

MR. SADAT:  So in the Plea Agreement there's a different number of images and videos as opposed --

THE COURT:  Right.  There's 220-some compared to hundreds and hundreds more.

MR. SADAT:  Correct.

THE COURT:  Okay.

MR. SADAT:  Whether we use the number on the Plea Agreement or the one provided by Probation --

THE COURT:  Uh-huh.

MR. SADAT:  -- regardless, it's going to still be 600-plus images for the total that was found in his actual iCloud account.

THE COURT:  Uh-huh.

MR. SADAT:  The problem with that is two-fold -- and my argument -- it should be plus-three, that the appropriate --

THE COURT:  Right.

MR. SADAT:  -- number of images should actually be

225, and the reason for that is two-fold.  One, if you look at the specific language of the Plea Agreement and that of the Information --

THE COURT:  Uh-huh.

MR. SADAT:  -- the defendant only personally acknowledged having possession of three videos.  He did not at any point in time say that he had specific knowledge of all of the images and videos that were found in his iCloud account.  So it would be against the spirit of the Plea Agreement, for one, and more importantly -- arguably more importantly, it's against common sense, and what I mean by that is -- so the way that these images and videos were downloaded -- I don't know if you have an iPhone, but essentially on the iPhone there's a thing called an "App Store," and when you open up the App Store, you can download any kind of app, and the app that he happened to download is called "Viber."  Viber has about 200-million-plus active users.  It's similar to Facebook or --

THE COURT:  I read your briefing, Counsel.

MR. SADAT:  So the way it downloaded onto his iCloud account is, when you're scrolling through the app, like you scroll through Facebook or Instagram, all of those images and videos have a digital timestamp that then automatically uploads --

THE COURT:  To the cloud.

MR. SADAT:  -- to the iCloud --

THE COURT:  Yeah.

MR. SADAT:  -- assuming you connect it and it's connected to WiFi, "connected" meaning in an outlet.

THE COURT:  All right.  Now, let me stop both of you there.

MR. SADAT:  I'm sorry?

THE COURT:  Just a moment.

That was the primary issue that I wanted to talk to both of you about, and I'm concerned, and I think I want briefing on it.  I think I want a more in-depth look at this. This is a close issue, and what I do here affects a lot of other cases, potentially, concerning this argument.

Has your office had this argument occur before?

LESLIE DE LA TORRE:  No, Your Honor.  This is the first time we've heard it.

THE COURT:  Had you -- are you aware of it, Ms. Rabbani?  Are you aware of this?

MS. RABBANI:  No, Your Honor.

THE COURT:  I'm not either.  When I looked at it, I thought it was rather novel and of concern to me, also, counsel, and I didn't want to make a snap decision today.

And I know that you may have family coming in and they're going to be inconvenienced, but I really want briefing on this, and so I'm not prepared to sentence today

because the consequences of that, if I rule against you, are harsh.  If I rule for you, they're lenient -- or more lenient.  And this counting -- it can get convoluted.  It gets convoluted in our, for instance, by analogy crimes involving fraud, theft, et cetera, where we start upping the offense level significantly depending upon how much was taken, in a sense.  So if it's a hundred thousand, 500,000, and here, the Sentencing Commission does the same thing.  It takes these images and can boost this offense level dramatically, and I don't know yet if I'm comfortable making a decision.

So I want briefing on this -- in depth -- about how this works, et cetera.  Now, my law clerks know, and they've been talking to me, but I'd rather get it from you.  Okay?

So, unfortunately, folks, you're coming back. Okay?  I want to take a little bit of time with this, and I want more briefing on it.

So, counsel, why don't you two get together.  It could be now.  It can be after the holiday.  I'm not trying to inconvenience anybody.

But this can only be, Mr. O'Connor, to your benefit.  In other words, if I ruled right now and I ruled for the Government, it has some -- it ups your offense level. If I rule in your favor, it has some benefits to you, some significant benefits.  So let's take some time with this.

Why don't you two get together, just informally, talk to the family, and let's take a look at this because I hadn't -- I haven't had this issue before me either in terms of what was intended, you know, to be downloaded and looked at versus what you might be in terms of an app or a chatroom, and this is getting uploaded onto the cloud and you never intended to view the images, in fact they're almost going up; or you did.  I don't know.  The argument could be, "Judge, even if" -- from the prosecution standpoint, "even if there was a minimization of this, still he had them accessible on the iCloud, and he could look at them anytime."  So I'm not discounting that argument at all.  I just want to be certain of how this works.  Okay?

So, counsel, discuss that quickly now.

(Counsel confer.)

THE COURT:  And the only week I'm not available would be the second week in January, starting about January 8th.  So I'm here that first week the 2nd through the 4th.  I'm here the third week, the fourth week.

(Counsel confer.)

THE COURT:  And I'm here all over the -- you know, the holiday season, but I don't want to do that to you.  Okay?

MR. SADAT:  What date do you prefer in terms of the day of the week?

THE COURT:  No, no.  You tell me.

MR. SADAT:  Monday through Friday?

THE COURT:  But I need some time.  In other words, this isn't going to be a short sentencing.  It's not going to be a half hour.  It'll take some time.

(Counsel confer.)

THE COURT:  And I would suggest a Monday but I -- I think Monday, but I'd put it on the afternoon calendar this time, and I'll try to get rid of the rest of the cases.  So I would put you on at 2:00 or 2:30 so I'm done with most of the criminal calendar so we have a -- let's say, a quiet courtroom, like we do now, because of the allegations.

MR. SADAT:  How is February 5th?

THE COURT:  Sounds good to me.

MS. RABBANI:  Your Honor, the parties -- I would suggest the parties work out a briefing schedule and just make sure that the Court has all of the --

THE COURT:  Sure.

MS. RABBANI:  -- relevant briefs at least one week before.

THE COURT:  Sure.  Why don't you two work on that.

MS. RABBANI:  Okay.

THE COURT:  I trust both of you.  Why don't you work on that out in the hallway.  Take your time.  That way you can talk to the family, also, and make sure that most of

the folks can return on that day.

Now, I could be in another location out of the country.  If I am, I'll notify you, I'll delay it a week or advance it a week, but right now let's take February 5th.  Okay?  And let's take that at 2:00 o'clock in the afternoon.  Okay?

MS. RABBANI:  Okay.

THE COURT:  It's a novel issue, and when I saw it, I almost called you Friday and thought, "No.  I'd like to get you in here a little bit and just talk to you about the time."

Okay, counsel.  Thank you very much.

MS. RABBANI:  Thank you, Your Honor.

MS. DE LA TORRE:  Thank you.

(Proceedings adjourned at 7:58 a.m.)

///

///

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Julie Messa_____    February 24, 2025_____
Julie Messa, CET**D-403    Date
Transcriber